The Honorable Shane Broadway State Senator 201 Southeast Second Street Bryant, AR 72022-4025
Dear Senator Broadway:
I am writing in response to your request for my opinion on the following question:
 As part of its franchise agreement with Saline Memorial Hospital, the City of Benton dispatches all ambulance calls for the hospital. Does the City of Benton have the legal authority to spend city funds and use city personnel and equipment to dispatch emergency calls which originate outside the Benton City limits and do not benefit the residents of the City of Benton?
My inquiries reveal that the city, as franchisor, has contracted with franchisee Saline Memorial Hospital, which is apparently a county-run facility managed by a board appointed by the county judge. I will assume, then, that the hospital is a county facility.
RESPONSE
In my opinion, the answer to this question is "yes," so long as Benton's provision of dispatch services to county residents is supported by adequate consideration. *Page 2 
Benton is a city of the first class. Section 14-43-601(b)(1) of the Arkansas Code (Repl. 1998) defines the following as "municipal affairs" subject to local regulation in a city of the first class:4
 Matters of public health, which concern emergency medical services, emergency medical technicians, and ambulances, as defined in §§ 20-13-201 — 20-13-209 and 20-13-211, [1] and ambulance companies, shall be included in the term "municipal affairs" of cities of the first class.
Section 14-266-102 (Repl. 1998) further provides in pertinent part:
 (a)(1) It is legislatively determined that it may be desirable for cities of the first class and second class within this state to be authorized and empowered to own, operate, permit, control, manage, franchise, license, and regulate emergency medical services, emergency medical technicians, emergency and nonemergency ambulances, ambulance companies, their relative properties, facilities, equipment, personnel, and any and all aspects attendant to providing emergency medical services and ambulance operations as the cities may deem proper to provide for the health, safety, and welfare of their citizens. * * * (3) Therefore, in order to ensure the availability of state-of-the-art advanced life-support systems and ambulance systems, the General Assembly specifically delegates and grants to cities of the first class and second class the right and power to contract exclusively or otherwise, using competitive procurement methods, for the provision of emergency medical services and ambulance services for the city and to provide continuing supervision of those services.
 (c) The General Assembly has determined that this chapter grants cities of the first class and second class broad authority regarding emergency and nonemergency medical services. The General Assembly has further determined that cities of the first class and *Page 3 
second class should be allowed to enter into agreements with other cities within the county where they are located or with the county wherein they are located regarding emergency and nonemergency medical services. Therefore, cities of the first class and second class may enter into interlocal agreements with other cities located within the county wherein the city of the first class or second class is located, or with the county wherein the city of the first class or second class is located, and thereby exercise as a cooperative governmental unit all power granted to the city of the first class or second class by this chapter.
Section 14-266-105 (Repl. 1998) further authorizes a city of the first or second class to do the following:
 (1) To enact and establish standards, rules, and regulations which are equal to or greater than those established by the state concerning emergency medical services, as defined in this chapter, and emergency medical technicians, emergency and nonemergency ambulances, and ambulance companies, as defined under §§ 20-13-201
— 20-13-209 and 20-13-211;[2] however, the standards, rules, and regulations shall not be less than those established by this state;
 (2) To establish, own, operate, regulate, control, manage, permit, franchise, license, and contract with, exclusively or otherwise, emergency medical services, ambulances, ambulance companies, and their relative properties, facilities, equipment, personnel, and any and all aspects attendant to emergency medical services and ambulance operations, whether municipally owned or otherwise, including, but not limited to, rates, fees, charges, or other assessments as the cities consider proper to provide for the health, safety, and welfare of their citizens;
 * * * (4) To provide emergency medical services to its residents and to the residents of the county, surrounding counties, and *Page 4 municipalities within those counties, but only if the governing bodies of the counties and municipalities request and authorize the service under §§ 14-14-101, 14-14-103 — 14-14-110 or §§ 25-20-101 -25-20-108;[3] * * *
(2) A city regulating ambulance services, which municipally owns or operates those services, shall provide ambulance services to those surrounding areas whose governing bodies request and authorize those services but only if mutually agreeable contracts can be reached to provide those services.
 (3) All direct and indirect costs of extending those services shall be borne entirely by patient user fees or subsidies provided by the patient, municipality, or county to whom those services are rendered.
 (4) In no event shall the city extending ambulance services beyond its boundaries be required in any manner to subsidize or otherwise extend financial support to render those services.
 (c) The city shall have the same authority to regulate nonemergency ambulance services.
(Emphasis added.) Accord 14-266-107(b) (Repl. 1998) (affording cities of the first and second class the right to franchise emergency medical services).
In my opinion, the foregoing statutes clearly authorize a city of the first class like Benton by agreement to provide emergency medical services outside its city limits, including dispatch services on behalf of another emergency medical services provider. In Opinion No. 2003-225, one of my predecessors reviewed as *Page 5 
follows the range of possibilities for providing such services either within or outside city limits:
 Emergency medical services may be provided pursuant to a number of different types of legal and contractual arrangements. For example, cities of the first class are authorized to provide and regulate emergency medical services. See A.C.A. § 14-43-601(b). See also A.C.A. § 14-266-101 et seq. (the "Municipal Ambulance Licensing Act," under which cities can grant an exclusive franchise to an emergency services provider). Counties likewise are authorized to provide and regulate such services. See A.C.A. § 14-14-802,-803,-804; A.C.A. § 20-13-301 through 307. In addition, both cities and counties are authorized to create public facilities boards to administer emergency medical services. A.C.A. § 14-137-101 through-123. Boards created pursuant to this authority can be granted broad power to contract and otherwise govern the terms of the provision of services, including fees to be charged for such services. A.C.A. § 14-137-111. Emergency medical service can also be provided by a fire protection district duly organized pursuant to A.C.A. § 14-284-101 et seq. Such fire protection districts are authorized to provide ambulance service. A.C.A. § 14-284-102. Finally, governmental entities can enter into interlocal agreements pursuant to the Interlocal Cooperation Act, A.C.A. § 25-20-101 et seq., for the provision of emergency medical service, or they may enter into standard contracts for the provision of such service.
The only qualification I would add is that any provision of emergency dispatch services outside city limits by the City of Benton would have to be supported by some form of consideration in order to avoid having the expenditures constitute an illegal exaction in derogation of Ark. Const. art. 16, § 13. As implied in the above, testing the adequacy of consideration in any given instance will entail undertaking an intense factual review of the sort this office is neither authorized nor equipped to conduct. Assuming Saline Memorial Hospital provides emergency ambulance services within the City of Benton as well as outside city limits, this provision of in-city services by the hospital might serve as adequate consideration to support the city's provision of dispatch services extending into the county. Again, however, only a finder of fact could make this determination. *Page 6 
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely,
DUSTIN McDANIEL Attorney General
[1] The recited statutes are contained in the Emergency Medical Services Act.
[2] See note 1, supra.
[3] The referenced statutes from title 14 of the Code are contained within the county government code and set forth various notice and hearing requirements; the referenced statutes from title 25 comprise the Interlocal Cooperation Act, which provides for cooperative contracts between or among political subdivisions. *Page 1